[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Department of Children and Families (DCF) has moved to modify the disposition incident to an adjudication of neglect from protective supervision[1] of two of the respondent's children to a commitment to DCF.
The children who are the subject of these proceedings are Casey, age 12, and Nicole, age 10 1/2. The respondent mother is approximately 37 years. The respondent has been involved with DCF since 1988. On September 9, 1998, DCF exercised a 96 hour hold on the children. Two days later, an order of temporary custody was granted because the children were not regularly attending school; respondent had failed to provide for Nicole's medical needs and those of another, older child who is not the subject of these proceedings; the family was homeless and the respondent had no money to provide for the children. On October 22, 1998, the court adjudicated the children neglected and uncared for.
On April 1, 1999, the court ordered that the children be returned to the respondent under an order of protective supervision, with specific conditions. Those conditions required that the respondent (1) participate in parenting classes approved by DCF; (2) keep her whereabouts known to DCF; (3) participate in individual therapy and address issues regarding her role in her children's removal; (4) not transport the children until her driver's license was reinstated; (5) follow the recommendations of children's therapist; (6) maintain adequate and legal income; (6) continue to participate in substance abuse treatment through the Hartford Dispensary.
The respondent has not complied with all of these conditions. She has resisted counseling and has not been forthcoming with her family therapist. Her home was found to be "dirty and cluttered with clothes, bags and food items." At one point, the respondent revoked her authorization to Hartford Dispensary to release information about her, CT Page 13415 rendering DCF unable to verify the respondent's drug usage. She has failed to attend parenting classes and last year was having great difficulty parenting the children. She has not consistently maintained adequate housing for herself and her children.
DCF's motion is based principally on the following circumstances: (1) the respondent's unstable residency arrangements; (2) her drug problem; (3) occurrences of domestic violence; (4) leaving her children with an inappropriate caretaker, and (5) not being forthcoming with her counselor.
The respondent's living arrangements have historically been very unstable. In March of this year, she and the children were evicted from their apartment. They family then moved into the respondent's fiances one bedroom apartment. On March 23, 2000, the family moved into a shelter. The respondent was asked to leave the shelter because she was allegedly having contact with her "abuser," presumably her fiancé. On May 4, 2000, DCF learned that the respondent had moved back with her fiancé.
With respect to the respondent's drug problem, she has been on a methadone program for nearly three years. Prior to this year, she was doing very well, attending drug counseling at Hartford Dispensary, keeping all her appointments and having clean drug screens. She still goes to the Hartford Dispensary, and has gone for drug screens twenty-five times between January 11, 2000 and August 31, 2000. However, on January 11, 2000, February 23, 2000 and July 25, 2000, she tested positive for opiates. On February 9, 2000, she tested positive for cocaine.
Addressing DCF's concern over domestic violence, the court finds that on June 19, 2000, the respondent was involved in a domestic violence incident with her fiancé, who also had been involved in an incident of domestic violence with another partner in the undisclosed past. Casey told the DCF social worker that he was not present during the incident. Nicole reported that she was and that she saw the respondent's fiancé throwing the respondent's items out of the home and screaming at her to get out. She stated that during this incident respondent told her to leave the home but, from outside, she could hear the respondent and her fiance arguing. The DCF social study relates: "When [social] worker asked Nicole if she saw anyone get hit she looked at her brother, Casey, who told her [to] shut up and then replied ["]no["] to this worker. This worker further asked Casey and Nicole if [the fiancé] had ever used physical discipline on them and Casey reported . . . that [he had] grabbed him by the face during one incident. No further incidents were reported to this worker." CT Page 13416
In addition, the court, finds that in August, the respondent left the children with an inappropriate caretaker for 2 weeks. This caretaker has a severe mental health issue and is herself a person in whom DCF is interested. The caretaker had a broken arm and was unable to cook for the children. Her apartment was too small for Casey, Nicole and her own three children, and it was filthy.
The respondent, her fiancé and the children now are in family counseling with Ms. Katherine Lauer of Catholic Family Services. Without unnecessarily prolonging this memorandum, suffice it to say that neither the respondent nor her fiancé have been entirely candid with Lauer about their past actions. When many of the foregoing facts were brought to the attention of Lauer during cross-examination, she was unable to opine that it would be in the children's best interests to remain with the respondent
Parental noncompliance with an order of protective supervision, including the conditions made by the court in connection with that order, is a ground for a motion to modify that disposition. Practice Book § 33-8; see In re Stanley D., 45 Conn. App. 606, 611, 697 A.2d 370,697 A.2d 370, cert. denied, 243 Conn. 910, 701 A.2d 333 (1997). "Upon finding that the circumstances so warrant, the judicial authority on its own motion or acting on motion of any party and after notice is given and hearing has been held, may modify a previously entered disposition of protective supervision in accordance with the applicable general statutes." Practice Book § 33-8. The test for whether to modify a disposition is whether the modification is in the best interest of the child. Practice Book § 33-11; see In re Stanley D., supra, 612-13. The party moving to modify the disposition has the burden of proving this by a fair preponderance of the evidence. Practice Book § 33-11.
As discussed supra, the respondent has not complied with all conditions of the court issued in connection with the order of protective supervision. However, at the time of the hearing on the motion, she had obtained full-time employment and there was evidence that her fiancé was planning to purchase a home for himself and the family. The children were attending school, and there was no evidence that they were not well dressed, well fed or otherwise well cared for. With the exception of a positive drug screen for opiates on July 25, 2000, her prior positive screens were seven months ago. She is no longer a chronic drug abuser. Indeed, the evidence is that she has complied with drug treatment. The incidents of domestic violence also appear limited and episodic.[2] The respondent's placing the children with an inappropriate caretaker also was an isolated incident, and she has recognized that the caretaker was inappropriate. Although the mother and CT Page 13417 her fiancé have not been candid with their family counselor, they and the children are in family counseling.
The children's attorney represents that they wish to remain with their mother.
Of course while the evidence may have adduced only limited episodes, it nonetheless depicts a mother with many inadequacies, some very serious. Were the test simply whether the respondent has failed to comply with the court's orders, the motion would be granted. However, noncompliance with the court's orders does not necessarily indicate that removal from the mother is in the child's best interests. In many instances, of course, the necessity for removal is inherent in the nature of the violation. Here, the question is a close one. DCF bears the burden of proof and "[t]his case must be decided on the record." Augeri v. Planning ZoningCommission, 24 Conn. App. 172, 179, 586 A.2d 635, cert. denied,218 Conn. 904, 588 A.2d 1383 (1991).
The court shares the concerns of DCF enumerated supra. It also is distressed by the parentalization of Nicole and the children's apparent inability to recognize their mother's deficiencies. it is, nonetheless, convinced that uprooting, dislocating and placing the children in foster homes at this time will do more harm than keeping them under the court's protective supervision. Cf. In re Juvenile Appeal (Anonymous),177 Conn. 648, 660-62, 673, 420 A.2d 875 (1979). "Maybe the judicial obligation to shoulder these responsibilities can itself be captured by a much older rule, familiar to every doctor of medicine: `First, do no harm.'" Denver Area Educational Telecommunications Consortium, Inc. v.FCC, 518 U.S. 727, 778 (1996) (Souter, J., concurring).
DCF is commended for bringing this matter to the court's attention, involving, as it does, respondent's failure to comply with court orders. The court acknowledges counsels' observations that the respondent must be continually motivated to comply with several of these order. Should the respondent fail to provide the children with a stable home, should she return to drug use, should the children be repeatedly exposed to domestic violence, should they fail to regularly attend school or be adequately fed and clothed, a commitment to DCF will be necessary.
In light of the fact that the children are attending school, that there is no evidence that they are not reasonably well cared for, that the respondent has obtained full time employment and that she, the children and her fiancé are involved in family counseling, and in the absence of persuasive expert evidence that it would be in the children's best interests to be removed from their mother and committed to DCF, the motion of DCF to modify the disposition from protective supervision to CT Page 13418 commitment is, at this time, denied. For the same reasons, DCF's application for an order of temporary custody is also denied.
BY THE COURT
 Bruce L. Levin Judge off the Superior Court